IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

|  |  |
|---|---|
| STANLEY L. WADE,<br><br>      Petitioner,<br><br>  v.<br><br>REGIONAL DIRECTOR, INTERNAL<br>REVENUE SERVICE - OGDEN,<br><br>      Respondent. | Case No. 1:08-CV-148-CW-SA<br><br><br>**REPORT AND RECOMMENDATION** |

Before the court is a motion for summary judgment (Doc. 37) filed by Respondent Regional Director, Internal Revenue Service - Ogden. The Director argues that because Petitioner Stanley L. Wade cannot show that his petition for a writ of mandamus fits within an exception to the Anti-Injunction Act, the Director is entitled to summary judgment. Having carefully considered the parties' memoranda and oral arguments, the court recommends that the Director's motion be granted.

## BACKGROUND

On March 10, 2004, a federal indictment was filed alleging that Mr. Wade had violated several federal laws, including tax evasion. (Doc. 39-13.) In March 2005, as to the 1997-1999 tax years, Mr. Wade was convicted of conspiracy to defraud the IRS,

in violation of 18 U.S.C. § 371; attempting to evade income tax,

in violation of 26 U.S.C. § 7201; bankruptcy fraud, in violation

of 18 U.S.C. § 157; and making a false statement in bankruptcy,

in violation of 18 U.S.C. § 152.  Following the jury verdict, Mr.

Wade was sentenced on June 22, 2005, and judgment was entered

against him on June 23, 2005.  (Doc. 20-2; Case No. 2:04-cr-141-

TS, Docs. 1, 238, 279, 280.)  The judgment was executed on July

13, 2005.  (Case No. 2:04-cr-141-TS, Doc. 286.)

At Mr. Wade's sentencing hearing, the court reviewed the

presentence report with Mr. Wade, his counsel, and the

prosecutor.  (Doc. 18-2 (Exhibit "B" to Petitioner's "Objections

to Magistrate's Report and Recommendations").)  The court

explained certain aspects of the Sentencing Guidelines relevant

to Mr. Wade's case as follows:

> Sentencing Guidelines Section
> 2T1.1(c[)](1) directs that, quote, the tax
> loss is the total amount of the loss that was
> the object of the offense, that is, the loss
> that would have resulted had the offense been
> successfully completed, end of quote.  The
> Sentencing Guidelines anticipate and indeed
> call for estimation of loss amounts when
> certain numbers are not available.
> Application note 1 explains that, quote, in
> some instances the amount of the tax loss may
> be uncertain; the guidelines contemplate that
> the court will simply make a reasonable
> estimate based on the available facts, end of
> quote.  Further, application note 3 to
> Sentencing Guidelines Section 2B1.1 clarifies
> that the court need only make a reasonable
> estimate of the loss.  The presentence report
> relies upon calculations derived from
> reasonable methodology by the IRS to arrive
> at a reasonable estimate of the loss to the

United States that would have resulted had
the offense been successfully completed.  In
contrast, defendant's position that he should
be assessed zero tax loss for the years in
question is undoubtedly unreasonable.
         The Court would further note that
despite three filings by the defendant in
this case before this hearing today and again
today, there has been no challenge to the
actual methodology relied upon in the
presentence report.  The Court finds that the
estimated tax loss amounts contained in the
presentence report are accurate and
reasonable.
         Further, the Court finds that the tax
loss amounts for the years cited in the
presentence report are relevant, and based
upon the years in question in the counts of
conviction and relevant conduct.  Therefore,
the presentence report is accurate and
reasonable in this respect and will not [be]
amended.
. . .
         Therefore, defendant's objections as
they relate to the calculation of tax loss
for sentencing purposes are overruled.

(*Id.*, at 2-3.)

Mr. Wade was sentenced to 100 months in prison.  His

judgment provided that he pay a "fine" "forthwith" of

$125,000.00, a "special assessment" of $700.00, but did not order

him to pay any "restitution."  (Doc. 20-2.)  The judgment also

lists five "special conditions of supervised release/probation,"

two of which are:

1.    The defendant shall file, or cause to be
      filed, all delinquent tax returns with
      the IRS case investigator within 18
      months from the date of sentencing.
2.    Defendant shall establish a payment
      schedule or forfeiture plan with the IRS
      for the payment of delinquent tax

obligations within 18 months from the
                    date of sentencing.

(*Id.*)  Thus, although the criminal court relied upon estimates of

Mr. Wade's tax liabilities regarding the years at issue in his

criminal case, the judgment itself does not specifically set

forth any amount of taxes determined to be due and owing.

    On approximately February 27, 2006, Mr. Wade filed five

amended federal income tax returns (1) for the 1998 tax year,

reporting $258,161.00 of additional tax (Doc. 39-6, at 1); (2)

for the 1999 tax year, reporting $149,566.00 of additional tax

(Doc. 39-7, at 1); (3) for the 2000 tax year, reporting

$149,302.00 of additional tax (accompanied by a $149,302.00

payment) (Doc. 39-8, at 1); (4) for the 2001 tax year, reporting

$149.307.00 of additional tax (accompanied by a $149,302.00

payment) (Doc. 39-9, at 1); and (5) for the 2002 tax year,

reporting $149,301.00 of additional tax (accompanied by a

$149,302.00 payment) (Doc. 39-10, at 1).

    In April 2006, Mr. Wade filed an amended federal income tax

return for the 1997 tax year, reporting additional tax in the

amount of $225,940.00 (accompanied by a payment in the amount of

$223,679.00) (Doc. 39-5, at 1) and he paid $257,115.00 towards

his 1998 taxes (Doc. 39-6, at 1).

    On June 18, 2007, the IRS assessed against Mr. Wade:  (1)

$135,401.29 of additional interest for the 1997 tax year (Doc.

39-5, at 3); $134,230.25 of additional interest for the 1998 tax

                                  4

year (Doc. 39-6, at 2); $60,727.03 of additional interest for the 1999 tax year (Doc. 39-7, at 2); $43,275.98 of additional interest for the 2000 tax year (Doc. 39-8, at 3); $30,869.93 of additional interest for the 2001 tax year (Doc. 39-9, at 2); and $21,255.34 of additional interest for the 2002 tax year (Doc. 39-10, at 2).

On October 2, 2007, the IRS sent a Notice of Deficiency by certified mail to Mr. Wade for the tax years 2000 through 2004. (Doc. 39-15.)  On January 30, 2008, the IRS sent a Notice of Deficiency by certified mail to Mr. Wade for tax years 1994 through 1999.  (Doc. 39-14.)

On March 10, 2008, the IRS assessed against Mr. Wade:  (1) $134,600.00 of additional tax and a $212,926.50 fraud penalty for the 2000 tax year (Doc. 39-8, at 3); (2) $144,564.00 of additional tax and a $220,399.50 fraud penalty for the 2001 tax year (Doc. 39-9, at 2); and (3) $133,021.00 of additional tax and a $211,742.25 fraud penalty for the 2002 tax year (Doc. 39-10, at 2).  That same day, because the IRS determined that Mr. Wade had failed to file a tax return for the 2003 tax year, the IRS assessed a $215,911.00 federal income tax, a $161,933.25 miscellaneous penalty, $112,911.46 of interest, and a $50,739.00 failure-to-pay-tax penalty for the 2003 tax year.  (Doc. 39-11, at 1.)  Also that day, because the IRS determined that Mr. Wade failed to file a tax return for the 2004 tax year, the IRS assessed a $119,717.00 federal income tax, a $89,787.75

miscellaneous penalty, $49,906.33 of interest, and a $20,950.47 failure-to-pay-tax penalty for the 2004 tax year.  (Doc. 39-12, at 1.)

On June 23, 2008, the IRS made the following assessments against Mr. Wade: (1) $277,918.00 of additional tax, a $208,438.50 fraud penalty, and $793,155.76 of interest for the 1994 tax year (Doc. 39-2, at 1); (2) a $303,365.00 additional tax, a $227,523.75 fraud penalty, and $743,221.12 in interest for the 1995 tax year (Doc. 39-3, at 1); (3) a $303,836.00 additional tax, a $229,377.00 fraud penalty, and $638,981.13 in interest for the 1996 tax year (Doc. 39-4, at 1); (4) a $100,838.00 additional tax and a $245,083.00 fraud penalty for the 1997 tax year.  (Doc. 39-5, at 3); (5) a $148,600.00 additional tax and a $305,070.75 fraud penalty for the 1998 tax year (Doc. 39-6, at 2); and (6) $96,589.00 of additional taxes and a $184,616.25 fraud penalty for the 1999 tax year (Doc. 39-7, at 2).[1]

On December 10, 2008, Mr. Wade, a prisoner acting pro se,[2] initiated this action by filing a petition for a writ of mandamus, and the case was assigned to United States District

---

[1]A more current chart of the amount of unpaid taxes, penalties, and interest calculated by the IRS is attached to Mr. Wade's November 12, 2010 Motion for Judicial Notice.  (Doc. 49, at 3.)

[2]Because Plaintiff is acting *pro se* in this action, the court construes his pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003)*; Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Judge Clark Waddoups.  (Docs. 1, 4.)  In his petition, Mr. Wade

argues that, as required by the court in his criminal case, he

filed his tax returns within 18 months from the date of his

sentencing.  Mr. Wade alleges that the tax returns he filed

reflected the amount of taxes, penalties, and interest determined

by the IRS that had appeared in his presentencing report, and

that the IRS had accepted those returns and the payments in full

(that had also been made within 18 months of sentencing).  Mr.

Wade alleges that more than three years after accepting those

returns, the IRS announced that Mr. Wade owed more money for

those tax years.  Mr. Wade argues that both collateral estoppel

and the three-year statute of limitations bar the IRS from

seeking to collect additional taxes, interest, or penalties on

taxes for those tax years at this late stage.  (Doc. 1, at 1-2.)

In summary, in his petition, Mr. Wade is requesting that the

court issue a writ of mandamus to prevent the IRS from any

further collection action for the tax liabilities assessed with

regard to the tax years at issue in his criminal case.  Mr. Wade

also appears to be requesting that the writ of mandamus prevent

the IRS from any further collection action for tax liabilities

for other unspecified years which Mr. Wade alleges have been paid

by his wife, Janet Wade, on his behalf.

On December 21, 2009, Judge Waddoups referred the case to

United States Magistrate Judge Samuel Alba, pursuant to 28 U.S.C.

§ 636(b)(1)(B).  (Doc. 25.)  On March 10, 2010, Magistrate Judge

Alba ordered the Director to file a scheduling order, determining that because Mr. Wade was incarcerated, the parties would not hold a joint scheduling conference. (Doc. 29.) Mr. Wade objected to the order (Doc. 31), but Judge Waddoups overruled those objections in an April 14, 2010 order (Doc. 34).

On June 14, 2010, Mr. Wade filed a pleading entitled "Reply to Respondent's Letter of June 3, 2010, Refusing to Provide Answers and Responses to Petitioner's Rules 33, 34 and 34 [sic] Requests." (Doc. 35.) Keeping in mind that Mr. Wade was acting pro se, the court construed this pleading to be a motion to compel, and ordered the Director to respond to that motion by July 9, 2010. (Doc. 36.) The Director responded to the motion to compel on July 8, 2010 (Docs. 40, 41), and Mr. Wade replied to that response on July 21, 2010 (Doc. 42).

On August 27, 2010, Magistrate Judge Alba issued an order concluding that the Director was not required to respond to Mr. Wade's disputed discovery requests because they were untimely, and denying Mr. Wade's motion to compel. (Doc. 45.) Mr. Wade objected to that order on September 9, 2010. (Doc. 46.) On March 4, 2011, Judge Waddoups issued a memorandum decision denying Mr. Wade's objections. (Doc. 54.)

On June 28, 2010, the Director filed the motion for summary judgment that is currently before the court. (Doc. 37.) Mr. Wade responded to the summary judgment motion on September 9,

2010 (Doc. 47), and the Director replied to that response on September 16, 2010 (Doc. 48).

In November 2010 and January 2011, Mr. Wade also filed three other pleadings: (1) Motion Pursuant to Fed. R. Evid. 201(d) for Judicial Notice (Doc. 49); (2) Motion to Supplement Petition with New Evidence (Doc. 52); and (3) Motion for Judicial Notice Pursuant to Fed. R. Evid. 201(d) (Doc. 53). The court granted in part and denied in part the first of these motions, and granted the second and third of these motions. (Doc. 55.)

## ANALYSIS

Summary judgment is appropriate when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the record, such as the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine factual dispute for trial. *See* Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). The court views the evidence and draws any inferences in a light

most favorable to the party opposing summary judgment, *see Mares*, 971 F.2d at 494; however, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in its complaint, but must respond with specific facts showing the existence of a genuine factual dispute to be tried. *See* Fed. R. Civ. P. 56(c) & (e); *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980).

The Director argues that he is entitled to summary judgment because the Anti-Injunction Act bars Mr. Wade's petition for a writ of mandamus. Although the Mandamus Act grants district courts jurisdiction over any suit seeking mandamus, it does not override the Anti-Injunction Act. *See Estate of Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999). The Anti-Injunction Act withdraws all courts' jurisdiction over suits filed "for the purposes of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a); *see also Estate of Michael*, 173 F.3d at 506. In order for the court to have jurisdiction over a suit seeking a writ of mandamus to restrain the assessment or collection of any tax, the petitioner must show that his claim fits within the narrow exception to the Anti-Injunction Act outlined by the Supreme Court in *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962).

In *Wyoming Trucking*, the Tenth Circuit found that the *Williams Packing* exception allows an injunction of a tax if the following two-part test is met: (1) "it is clear that under no

10

circumstances could the government ultimately prevail," and (2) that "equity jurisdiction would otherwise exist" because of the existence of irreparable injury for which there is no legal remedy. *See Wyoming Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 933, 935 (10th Cir. 1996); *see also Bob Jones University v. Simon*, 416 U.S. 725, 746 (1974).

## I. Whether the Director Could Ultimately Prevail

Mr. Wade makes two arguments to show that this case fits within the first requirement of the *Williams Packing* exception: (1) that the doctrine of collateral estoppel prevents the IRS from further collection efforts and (2) that the IRS' activity is barred by the three-year statute of limitations.

## A. Collateral Estoppel

First, Mr. Wade argues that due to the doctrine of collateral estoppel, the IRS is prevented from assessing additional tax liabilities against him for the 1997-1999 tax years (those tax years at issue in the criminal trial) because he filed amended returns and paid the owed taxes based on the figures set forth in the presentence report provided to the court in his criminal case. (Doc. 1.) To establish that collateral estoppel applies to this case, Mr. Wade must show that:

> (1) the issue previously decided is identical
> with the one presented in the action in
> question, (2) the prior action has been
> finally adjudicated on the merits, (3) the
> party against whom the doctrine is invoked
> was a party or in privity with a party to the
> prior adjudication, and (4) the party against

11

> whom the doctrine is raised had a full and
> fair opportunity to litigate the issue in the
> prior action.

*Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009).

Turning to the first requirement of collateral estoppel, the issue Mr. Wade maintains was previously decided is the amount of his federal tax liabilities. Mr. Wade argues that the amount of his federal tax liabilities was determined in the criminal action brought against him. Specifically, Mr. Wade maintains that those amounts were set forth in the presentence report prepared pursuant to Fed. R. Crim. P. 32(c)(1)(A), and when the court adopted the presentence report, that adoption constituted a judgment on the merits as to his federal tax liabilities for the years at issue in the criminal trial; therefore, the IRS was prevented from making additional assessments against him after the trial.

As set forth in detail above, in the criminal action, Mr. Wade was convicted of violating 18 U.S.C. § 371, Conspiracy to Defraud the IRS; 26 U.S.C. § 7201, Attempt to Evade Income Tax; 18 U.S.C. § 157, Bankruptcy Fraud; and 18 U.S.C. § 152, False Statement in Bankruptcy. At the sentencing hearing, the court reviewed the presentence report, which contained estimated tax liability amounts, so that the court could make a "reasonable estimate of loss" for purposes of applying the Sentencing Guidelines (Doc. 18-2 (Exhibit "B" to Petitioner's "Objections to Magistrate's Report and Recommendations"), at 2-3); however, the

judgment entered by the court does not include any amounts to be paid in "restitution," and thus does not specifically set forth the amount of taxes determined to be due and owing for each tax year at issue in the criminal case.

In order to establish a violation of 26 U.S.C. § 7201, Attempt to Evade Income Tax, the prosecution does not have to establish the exact amount of back taxes due; instead, the prosecution need only establish that a substantial tax deficiency exists. *See United States v. Kaatz*, 705 F.2d 1237, 1246 (10th Cir. 1983); *see also Hickman v. Commissioner of Internal Revenue*, 183 F.3d 535, 538 (6th Cir. 1999) (stating that in a criminal conviction, the jury is not asked to determine a specific tax liability and the district judge enjoys considerable discretion as to whether he should order restitution, and if so, as to the amount).

Furthermore, the presentence report is created to aid the court in determining an appropriate criminal sentence, not to establish a defendant's binding and specific tax liability. *See United States v. Wondrack*, 578 F.2d 808, 809 (9th Cir. 1978) (explaining that the "'primary purpose (of the presentence report) is to aid the court in determining the appropriate sentence'" (quoting Division of Probation, Administrative Office of the United States Courts, Pub. No. 105, The Presentence Investigation Report 1 (1978))). The court in Mr. Wade's criminal trial used the estimated tax amounts to determine

whether Mr. Wade fell within a particular range in determining his sentence. (*See, e.g.*, Doc. 18, Exhibit D, at 2 (where, during Mr. Wade's sentencing hearing, the court discussed with the prosecutor that a guideline enhancement was required when the reasonable estimated tax amount was between 2.5 and 7 million dollars, so whether to include certain extrapolated dollar amounts made no difference to the guideline calculation because the dollar amount would fall within the same range and the enhancement would be the same)). Indeed, during the sentencing hearing, when discussing the estimated tax loss amounts contained in the presentence report and whether they were accurate and reasonable, the court specified that the court's "calculation of tax loss" was "*for sentencing purposes.*" (Doc. 18, Exhibit B, at 3.)

In summary, Mr. Wade's judgment neither includes any restitution amount nor sets forth the amount of taxes determined to be due and owing for each tax year at issue in the criminal case.[3] Further, the tax liability amounts set forth in the presentence report were reasonable estimates of Mr. Wade's tax liability compiled to aid the court in determining Mr. Wade's

---

[3]The "fixed monetary imposition" "set forth in the Judgment and Commitment Order" to which Mr. Wade refers in the letter he attached to his November 22, 2010 Motion to Supplement Petition with New Evidence (Doc. 52) is likely referring to the $125,000.00 fine and/or the $700.00 special assessment Mr. Wade is required to pay as part of his criminal sentence. (Doc. 20-2.)

criminal sentence under the Sentencing Guidelines.  Therefore, the court rejects Mr. Wade's argument that the tax liability amounts set forth in his presentence report constituted a judgment on the merits as to his federal tax liabilities for the years at issue in the criminal trial, thereby preventing the IRS from making additional assessments against him after the trial.[4]

In addition, Mr. Wade has not shown that the criminal trial court made any other judgment or determination on the merits as to the specific and binding amount of Mr. Wade's tax liability.[5] As a result, Mr. Wade has not shown that the issue decided in his criminal action was identical with the one presented in this

---

[4]The court has considered *United States v. Ursery*, 518 U.S. 267 (1996), as requested by Mr. Wade in his recent January 12, 2011 Motion for Judicial Notice (Doc. 53); however, the court concludes that *Ursery* is inapplicable to this case.  If anything, language in *Ursery* contradicts Mr. Wade's argument.  *See, e.g.*, *Ursery*, 518 U.S. at 292 ("'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.'" (citation omitted)).  Furthermore, the court notes that Section 7201 provides that a person who evades federal taxes is guilty of a felony "in addition to other penalties provided by law."  26 U.S.C. § 7201.  Thus, Section 7201 alludes to the existence of other legal penalties - including civil penalties.

[5]This court refers again to the first two of the five "special conditions of supervised release/probation" contained in Mr. Wade's judgment, which are quoted on pages 3-4 in this report and recommendation.  Those two conditions required Mr. Wade to (1) file all delinquent tax returns and (2) establish a payment schedule or forfeiture plan with the IRS for the payment of delinquent tax obligations, both within 18 months of sentencing.  These conditions do not indicate the amounts Mr. Wade was required to pay to satisfy these obligations, again demonstrating that the criminal court recognized that the specific amount of tax liability owed by Mr. Wade to the IRS was yet to be determined.

case; therefore, Mr. Wade has not shown that the elements of collateral estoppel are met in this case.

## B. Statute of Limitations

The second argument Mr. Wade makes to show that this case meets the first requirement of the *Williams Packing* exception is that the three-year statute of limitations for assessment has expired with regard to the liabilities at issue.[6]  (Doc. 1, at 2, 5.)

In the memorandum supporting his summary judgment motion, the Director explains that the IRS is required to make a tax assessment within a three-year period after a taxpayer files his or her return.  *See* 26 U.S.C. § 6501(a).  Nevertheless, an exception to this general statute of limitations exists for a false or fraudulent return filed with the intent to evade tax. *See* 26 U.S.C. § 6501(c)(1).  In those situations, the IRS may assess the tax, or commence a proceeding in court for the collection of the tax, "at any time."  *Id.; Anaya v. Commissioner of Internal Revenue*, 983 F.2d 186, 189 (10th Cir. 1993) (stating

---

[6]As set forth in the Background section above, all of the tax assessments at issue were made by June 23, 2008, three years to the day of the issuance of the judgment in Mr. Wade's criminal case.  Mr. Wade filed his amended federal income tax returns for the 1998-2002 tax years on February 27, 2006, and for the 1997 tax year in April 2006.  Also in those two months, Mr. Wade made tax payments toward his 1997, 1998, 2000, 2001, and 2002 tax liabilities.  As a result, the court notes that an argument could be made that because the assessments were made by June 23, 2008, they were made within the three-year statute of limitations period.

that the IRS forever tolls the limitation period if a fraudulent return was filed).

Turning to Mr. Wade's case, as set forth in detail above and as reflected on the Forms 4340 provided to the court by the Director, the IRS has assessed a civil fraud penalty against Mr. Wade for the 1994 through 2002 tax years.[7] (Doc. 39, Exhibits 2-10.) Consequently, the three-year statute of limitations on assessment for those nine tax years does not apply.

Furthermore, it is "well established" that under 26 U.S.C. § 6653(b), Mr. Wade's conviction under 26 U.S.C. § 7201 for federal income tax evasion collaterally estops him from denying fraud in a subsequent civil proceeding, such as this one. *Klein v. Commissioner of Internal Revenue Service*, 880 F.2d 260, 262 (10th Cir. 1989). Therefore, with regards to the 1997, 1998, and 1999 tax years - the years for which Mr. Wade was convicted of tax evasion - he is collaterally estopped from challenging fraud penalties imposed upon him for those years.

---

[7]As explained by the Director in his summary judgment memorandum, Forms 4340 constitute presumptive proof of a valid assessment for purposes of a summary judgment motion and are the appropriate means of establishing an assessment on such a motion. The Forms 4340 submitted by the Director show that the federal tax liabilities were properly assessed against Mr. Wade, that the notices and demand for payment were properly sent, and that Mr. Wade is presumptively liable for the unpaid taxes, interest, penalties, and other statutory additions identified thereon. *See March v. IRS*, 335 F.3d 1186, 1188 (10th Cir. 2003); *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992).

Regarding the fraud penalties assessed for tax years 1994-1996, and 2000-2002, the years not included in Mr. Wade's criminal case,[8] the IRS determined that Mr. Wade engaged in the same activities that he engaged in during the years at issue in his criminal case (i.e., not reporting all of the rental income from his rental properties and all of the interest income from his bank accounts and therefore submitting fraudulent returns). (Docs. 39-14, 39-15 (Notices of Deficiency for tax years 1994-1999 and 2000-2004).)

Because Mr. Wade has failed to show that the IRS is barred from imposing tax assessments by the three-year statute of limitations, the court rejects that argument. Furthermore, because Mr. Wade has not shown that collateral estoppel or the statute of limitations bars the IRS' actions, he has failed to establish that it is clear that under no circumstances could the government ultimately prevail, the first factor of the *Williams Packing* test. As a result, the court concludes that Mr. Wade's petition is barred by the Anti-Injunction Act.

## II. Equity Jurisdiction

Although the court's inquiry could end here, because Mr. Wade has not met the first factor of the *Williams Packing* test, the court also notes that Mr. Wade has not shown that this case

---

[8]Mr. Wade failed to file federal income tax returns for the 2003 and 2004 tax years; therefore, the three-year statute of limitations does not apply to those years and the tax may be assessed "at any time." *See* 26 U.S.C. § 6501(c)(3).

18

meets the second requirement of the *Williams Packing* exception - that equity jurisdiction is present in this case because of the existence of irreparable injury for which there is no legal remedy.

First, the court notes that Mr. Wade has not pleaded what his irreparable injury is and how there is no legal remedy.

Second, as the Director points out, under applicable case law, Mr. Wade was presented an adequate legal remedy in the Notices of Deficiency Mr. Wade admits he received (Doc. 1, at 7). Pursuant to 26 U.S.C. § 6213, a taxpayer may file a petition for the redetermination of the deficiency in the United States Tax Court within 90 days of receiving a notice of deficiency. If the taxpayer goes to tax court, he may obtain a redetermination of deficiency, which amount is not assessed or required to be paid until the tax court decision has become final. *See* 26 U.S.C. §§ 6213(a), 6215. In other words, the notice of deficiency is the "ticket" allowing the taxpayer to challenge the tax assessment in tax court before paying it. Although Mr. Wade alleged in his petition that it would be burdensome for him to file a petition with the United States Tax Court, that allegation lacks some credibility because he was able to file the instant petition for a writ of mandamus, by which he has contested the assessment of the liabilities against him. "A taxpayer cannot render an available review procedure an inadequate remedy at law by voluntarily forgoing it." *Alexander v. "Americans United" Inc.*,

416 U.S. 752, 762 n.13 (1974). In other words, Mr. Wade had an adequate legal remedy to address any alleged irreparable injury, but he failed to pursue it. Thus, Mr. Wade's failure to file a tax court petition precludes the presence of equity jurisdiction in this action. *See Mathes v. United States*, 901 F.2d 1031, 1033 (11th Cir. 1990); *Bowen v. United States*, 331 F.2d 149, 150 (5th Cir. 1964).

The court also notes that, as held by the Tenth Circuit in *Wyoming Trucking Ass'n, Inc.*, 82 F.3d at 935, a refund suit is an adequate remedy at law. *See also Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 314 (9th Cir. 1982). Although, in relying on *Estate of Michael*, 173 F.3d at 510, Judge Waddoups concluded that a refund suit was not an adequate alternative legal remedy when ruling upon the Director's earlier motion to dismiss (Doc. 22, at 8), Judge Waddoups was applying the required standard when reviewing a motion to dismiss. Under that standard, the court read Mr. Wade's petition in the light most favorable to Mr. Wade (Doc. 22, 7-8) and was obligated to accept the allegations in Mr. Wade's petition. Now, in reviewing Mr. Wade's petition under the standards applicable in a summary judgment motion, the court has rejected Mr. Wade's statute of limitations argument. Consequently, the reasoning upon which Judge Waddoups relied in *Estate of Michael* (Doc. 22, at 8) no longer applies to this case.

In summary, the court notes that equity jurisdiction is not available in this case because Mr. Wade has not shown that an

irreparable injury resulting from the lack of an adequate legal remedy exists in this case. Thus, Mr. Wade also has failed to establish the second requirement of the *Williams Packing* exception.

### CONCLUSION

Based on the above analysis, the court concludes that Respondent Regional Director, Internal Revenue Service - Ogden has shown that Mr. Wade's petition is barred by the Anti-Injunction Act. Therefore, the Director has established that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. As a result, **IT IS RECOMMENDED** that the Director's motion for summary judgment (Doc. 37) be **GRANTED** and that Mr. Wade's petition for a writ of mandamus (Doc. 1) be **DENIED.**

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b),

within fourteen (14) days after receiving it.  Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 21st day of March, 2011.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge